## J. G. GRIEB ET AL. v. JULIUS KUTTNER.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS NO. 1 OF PHILADELPHIA COUNTY.

Argued March 31, 1890—Decided May 26, 1890.

[To be reported.]

135  281
159  560
135  281
179  68

135  281
22 SC  1530
135  281
32 SC  184
32 SC  2185

1. The plaintiff at whose instance a warrant of arrest under the act of July 12, 1842, P. L. 339, was issued, has a right to have an order quashing such warrant reviewed by the Supreme Court, but such review will be limited to the regularity of the proceeding as it appears upon the record.*
2. If, after hearing testimony, the judge should discharge the defendant from arrest, his action would not be reviewable; but when, without a hearing on the facts, or any action on the merits of the case, the warrant has been quashed on motion for matter of law appearing on the record, a question for review is presented.
3. The object of a warrant of arrest under the act of 1842 and that of an attachment under the act of March 17, 1869, P. L. 8, being the same, to wit, to compel payment of a debt fraudulently contracted or evaded, but their mode of reaching it being entirely different, they are not exclusive of each other, and both may be necessary to give complete relief.
4. A warrant of arrest may be issued in a suit begun by attachment under the act of 1869, when the attachment has failed to grasp sufficient property to satisfy the claim, or from any other cause has proved an inadequate remedy; and, if so issued, upon an affidavit averring such inadequacy, an order quashing it upon the ground that it would not lie in such a case, is error.

Before STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 136 January Term 1890, Sup. Ct.; court below, No. 666 December Term 1888, C. P. No. 1.

On December 24, 1888, John G. Grieb and others, trading

---

* See Hart v. Cooper, 129 Pa. 297.

Opinion of Court below.

as J. G. Grieb & Co., filed an affidavit averring that Julius Kuttner was indebted to them in the sum of $1,201.92, which indebtedness he had fraudulently contracted; and that he had fraudulently concealed property, money, etc., and had assigned, etc., or was about to assign, etc., his property with intent to defraud his creditors. Thereupon, a writ of attachment under the act of March 17, 1869, P. L. 8, was issued in favor of Grieb & Co. and against said Kuttner. To this writ the sheriff made return that he had attached certain goods and chattels as the property of the defendant, subject to a levy made under a certain writ of fieri facias, and subject also to two prior attachments under the act of 1869, and that on December 26, 1888, by virtue of said writ of fieri facias, he had sold the goods and chattels, so attached, for the sum of $1,872.40.

On January 30, 1889, the plaintiffs presented an affidavit setting forth that the proceeds of the sheriff's sale had been appropriated to the fieri facias under which the sale was made, charging that the defendant had fraudulently contracted the debt sued for by the plaintiffs, that he had property which he fraudulently concealed, and that he had assigned, removed and disposed of his property with intent to defraud his creditors, stating various facts and circumstances tending to support these charges. Upon consideration of this affidavit, ALLISON, P. J., issued a warrant of arrest against the defendant under the act of July 12, 1842, P. L. 339. The warrant recited the charges contained in the affidavit filed by the plaintiffs and stated that they "further produced satisfactory evidence of said charges, as is fully set forth in the affidavit."

The defendant, being arrested under the warrant and brought before President Judge ALLISON, moved to quash the warrant. The motion was not printed in the paper-books, but the ground of it was stated in the appellant's book to be that a warrant "ought not to issue in a suit begun by an attachment under the act of 1869."

After argument, ALLISON, P. J., on December 9, 1889, filed the following opinion and decree:

The material question raised by this motion to quash, is based upon an alleged legal conflict, so far as the enforcement of proceedings under the act of 1842 and the act of 1869 are con-

Opinion of Court below.

cerned.   It is also urged that the statements in the affidavit are
not sufficiently specific.   The important question is, where pro-
ceedings have been instituted under the act of 1869, can a
warrant under the act of 1842 for the arrest of the defendant
be issued, while the attachment under the act of 1869 is still
pending and undetermined?

The case which is cited in support of the principle for which
the defendant contends, Neal v. Perry, 3 Clark 65, discussed the
spirit and purpose of the act of 1842, claiming that the purpose
is to secure the payment of the debt and that it does not look
to the punishment of the defendant.   It places the most literal
construction upon the act of 1842, and the strictest construc-
tion as against any proceedings that would result in the incar-
ceration of the defendant.   In that case a fieri facias and an
alias fieri facias had issued upon a judgment which had been
obtained against the defendant, and a levy was made upon real
estate and also on personal property.   Judge SHARSWOOD re-
versed the case that was before him, holding that the issuing
of a fieri facias and levy on personal property is a legal satis-
faction of the debt, and that when the debt is paid or satisfied
the right to proceed by warrant under the act of 1842 falls,
that act declaring in several of its provisions that the proceed-
ing falls upon payment of the debt or upon giving bond for its
payment within the time in which the defendant would be en-
titled to enter bail for stay of execution, or upon entering bond
to take the benefit of the insolvent laws.   In either of these
cases, whatever facts may appear and however fraud may be
clearly proved, the judge is still bound, particularly upon the
payment of the judgment upon which the warrant was issued,
to discharge the defendant.   Judge SHARSWOOD held that the
proceeding was to be regarded as a proceeding in aid of the
claimant to collect his claim, but was not intended to provide
for the punishment of a defendant.

That principle seems to be recognized in a number of deci
sions; one in particular by Judge WILLIAMS, which follows
the decisions in 3d Clark, by Judge SHARSWOOD.   The ground
upon which the defendant was discharged was, that pending a
levy under a fieri facias, the defendant could not be arrested
on the judgment by a warrant under the act of 1842, it being
a fiction of law that a levy by the sheriff on personal property

is a discharge or legal satisfaction of the debt; the property is presumed to be in the possession or in the hands of the sheriff for the payment of the debt, and the defendant could not be arrested under the act of 1842. The point is not raised in this case, because no judgment was obtained and no fieri facias issued. The plaintiff had not levied an execution on personal property, as was the case in Neal v. Perry. In that case, a levy had been made upon real estate, which was condemned. The decision was founded especially upon the fact that there was a fieri facias and levy on personal property, which, in contemplation of law, satisfied the debt. Judge SHARSWOOD makes a distinction between a levy on real estate and a levy on personal property. In the one case, the property is vested in the sheriff for the purposes of execution, and is, in contemplation of law, a satisfaction of the debt; but, in a levy upon real estate, the title to the property remains in the defendant subject to the levy. This is all that that case decides.

In the case of Commonwealth v. O'Hara, 6 Phila. 402, which is also cited by the counsel for the defendant, in an able opinion by Judge WILLIAMS, the principal question discussed is as to whether the bankrupt law ipso facto supersedes all proceedings under the insolvent laws of the state, in all cases where the subject-matter and the persons are the same, and where it operates upon the same property; and, after expending a good deal of time and investigation upon that question, he then takes up the question that was decided by Judge SHARSWOOD, that a warrant of arrest under the act of 1842 could not issue pending proceedings on execution against defendant's property issued upon the same judgment upon which the warrant of arrest was obtained; and he says that if the act of 1842 had not been passed, he could not be arrested pending a levy on a fieri facias. He goes on to say that "in the case of Neal v. Perry, it was held that pending a levy on real estate by virtue of a fieri facias, a warrant of arrest under the act of July 12, 1842, could not issue against the defendant. If this be so, there is greater reason for holding that such a warrant could not issue pending a levy on personal property by virtue of a fieri facias in the hands of the sheriff, which is regarded as a satisfaction for some purposes, by the law, as long as it subsists." I think he misapprehends what Judge SHARSWOOD did say. He put it upon the

ground, not that real estate had been levied upon and con-
demned, but upon the legal ground that a levy upon personal
property by virtue of a fieri facias, is, in contemplation of law,
a satisfaction of the debt while it remains in the hands of the
sheriff, and that the warrant could not issue pending a levy
upon personal property by virtue of a fieri facias, but he con
firms the general doctrine which was so clearly set forth by
Judge SHARSWOOD in the case of Neal v. Perry.

As against this contention there is cited the case of Swartz
v. Lawrence, 12 Phila. 181, an opinion by the Court of Com
mon Pleas of this county, on a question which was then pre
sented, but which is not the question that is now before me,
which was as to whether an attachment under the act of 1869
might issue although an action for goods sold and delivered
was pending at the same time the attachment issued. I de-
cided that the two remedies although for the same cause were
not inconsistent. All that case decides is, that after the bring-
ing of a suit to recover a judgment, you may still proceed under
the act of 1869 by attachment and seize and hold the property
of the defendant. It does not touch the question whether a
warrant of arrest under the act of 1842 could be properly issued
pending a suit brought to recover a debt, or pending an attach-
ment under the act of 1869. Commenting on the authorities
in that case, I discussed at some length whether the two rem-
edies for the recovery of a debt by suit and by attachment
under act of 1869 were in conflict. The conclusion reached
was that they were not, but that a party who can make the
proper affidavit, can issue an attachment under the act of 1869
and hold the property pending a suit brought to recover a debt.
That is all that that case decides. It does not touch the ques-
tion that is now before me.

In the case of Fenstman v. Ury, 2 Pears. 257, Common
Pleas of Dauphin county, the question came up fairly, which
is, that where a plaintiff has attached all the property of the
defendant under the act of March 17, 1869, he cannot after-
wards have him arrested and held to bail under the act of July
12, 1842. Judge PEARSON takes the same view of the act and
its purpose that was taken by Judge SHARSWOOD and Judge
WILLIAMS, in the two cases to which I have referred, that the
act of 1842 was not intended for punishment, but was to give

Arguments.

the creditor the means of securing his debt under the supervision and control of the courts.   Judge PEARSON says that as a means of punishing fraud practiced by debtors in conveying away their property by assignment, the insolvent law of 1836 imposed severe penalties both on the assignor and the assignee, and that these laws are still in force.   He then goes on to say that when the application was made for the warrant he entertained serious doubts about whether a warrant under the act of 1842 could issue, pending the proceedings in attachment under the act of 1869, and he concludes after mature consideration that the two proceedings cannot be carried on at the same time, and that the issuing of the warrant under the act of 1842 for the arrest of the defendant after an attachment under the act of March 17, 1869, has been issued, that proceeding cannot be sustained.

In this case, which comes within the general spirit of the cases to which I have referred, it is clear that you cannot, pending an attachment under the act of 1869, issue a warrant under the act of 1842; and I therefore grant this motion and quash the warrant.

Thereupon the plaintiffs took this appeal, specifying that the judge erred :

1. In quashing the warrant of arrest.

—Upon the call of the case for argument in the Supreme Court, the appellee moved to quash the appeal, for the following reasons :

1. The record discloses no order, decree, or judgment of the court below from which an appeal lies to this court.

2. No appeal lies to this court from the order of the Hon. Joseph Allison, the president judge of the court below, quashing the warrant of arrest issued by him.

3. This court has no jurisdiction of the subject-matter of the appeal.

*Mr. J. M. Gest* (with him *Mr. W. P. Gest* and *Mr. John Sparhawk, Jr.*), for the appellants :

1. It is difficult to see why no appeal should lie from the order of the judge quashing the warrant of arrest.   It is certainly a judgment by which the appellants are aggrieved.   An

Arguments.

order setting aside an execution is reviewable : Pontius v. Nesbit, 40 Pa. 309 ; Weil v. Frauenthal, 103 Pa. 317 ; and an order quashing an attachment under the act of March 17, 1869, P. L. 8 : Parks v. Watts, 112 Pa. 4 ; Wetherald v. Shupe, 109 Pa. 389. So are proceedings of the Courts of Common Pleas in cases of contempt : Hummell's Case, 9 W. 416 ; Commonwealth v. Newton, 1 Gr. 453. But the question is absolutely set at rest by McDonough's Case, 37 Pa. 275, in which the Supreme Court reversed an order discharging McDonough from imprisonment under the insolvent laws, upon a certiorari, holding that it was erroneous, because he did not comply with the provisions of the act of assembly. That was no more than we ask the court to do in this case.

2. So far as the language of the act of July 12, 1842, P. L. 339, is concerned, it is obvious that the plaintiffs in this action have as perfect a right to a warrant of arrest as they would have had, prior to 1842, to a capias ad respondendum under § 3, act of June 13, 1836, P. L. 573. There is nothing in the act of March 17, 1869, P. L. 8, indicating an inconsistency between the warrant of arrest and the remedy by attachment which the latter act provides for. The attachment is simply a method of beginning a suit. If it be dissolved, the action does not abate, but continues as though begun by summons. The warrant of arrest cannot issue unless a suit is pending, or judgment has been obtained ; and there is no reason why the suit should not be commenced by attachment, the remedies being cumulative : Swartz v. Lawrence, 12 Phila. 181 ; Pontius v. Nesbit, 40 Pa. 309.

3. The cases cited by the learned judge in his opinion, are, with the exception of Fenstman v. Ury, 2 Pears. 357, dependent upon an entirely different principle, and Fenstman v. Ury is distinguishable on the ground that there the attachment was productive, while in the case at bar it was absolutely fruitless. When we issued this warrant, there was absolutely nothing subject to the lien of our attachment, as clearly appears from the record of this case. Moreover, the rule that a levy will operate as a satisfaction of the debt would not apply to this case, even if we had issued a fieri facias, because the controversy here is solely between the plaintiffs and the defendant, and the rights of other creditors are not concerned : Cummin's

App., 9 W. & S. 73; Lyon v. Hampton, 20 Pa. 46; Burk's
App., 89 Pa. 398.   The dishonest debtor is as liable to arrest
under the act of 1842, as every defendant was prior to the act:
Wills v. Kane, 2 Gr. 60; Neal v. Perry, 3 Clark 65; Wraith
v. Van Dewater, 2 Pars. 251; Moak v. De Forrest, 5 Hill 605;
Gosline v. Place, 32 Pa. 520; Berger v. Smull, 39 Pa. 302.

*Mr. Mayer Sulzberger*, for the appellee :

1. This court has no jurisdiction to review these proceed-
ings.   Proceedings on a warrant of arrest are no part of the
proceedings in the cause, but merely incidental and collateral
thereto, and they take place, not before the court, but before
the judge merely: Scully v. Kirkpatrick, 79 Pa. 324.   The
action of the judge will not be reviewed further than to see
that his proceedings were regular; his opinion on the proofs
will not be considered: Berger v. Smull, 39 Pa. 317.   The rea-
son of this is obvious.   The warrant is to be issued when cer-
tain facts are established by affidavit to the " satisfaction of
the judge," and at the hearing he is to be " satisfied " that
the allegations of the complaint are substantiated: §§ 3, 8, act
of July 12, 1842, P. L. 339.   The issuing of the warrant, and
the subsequent commitment or discharge of the defendant, are
discretionary with the judge.   When the defendant has been
discharged, the warrant has spent its force, and this court could
not, by a reversal, reinstate it.

2. In Gosline v. Place, 32 Pa. 520; Berger v. Smull, 39 Pa.
317, and Commonwealth v. McCabe, 22 Pa. 450, the cases in
which this court entertained jurisdiction to review such pro-
ceedings, the defendant was committed.   Being in custody, he
invoked the power of the court to inquire into the cause of his
detention, by writ of habeas corpus.   Although the report of
Berger v. Smull does not say in so many words that such a
writ was issued in that case, this evidently must have been done.
The writ of certiorari was merely ancillary to the habeas cor-
pus, to bring up the proceedings that the cause of commitment
might be inquired into : Gosline v. Place, supra.   In the case
at bar, the defendant was not committed, and we have the
anomaly of a writ of certiorari, not ancillary to another writ
which properly brings the matter before the court, but itself
the foundation of the proceeding to review the action of the

lower court.   The books afford no precedent for such a course, and such a proceeding cannot be sustained.

3. In matters within the discretion of the lower courts, their proceedings will be reviewed on certiorari, by a higher court, no further than to ascertain whether they have transcended their jurisdiction : Commonwealth v. Nathans, 5 Pa. 124 ; Carpenter's Case, 14 Pa. 486 ; Duff's Road, 66 Pa. 459.   Hence, there would be nothing to review if the record showed that this defendant had been discharged on the hearing, as the testimony would be no part of the record and could not be considered : Duff's Road, supra ; Union Canal Co. v. Keiser, 19 Pa. 134 ; Mauch Chunk v. Nescopeck, 21 Pa. 46.   The record shows that the warrant was quashed.   The judge's opinion, giving reasons for doing so, cannot be considered : Mauch Chunk v. Nescopeck, supra ; White v. Leeds, 51 Pa. 187. Nor does it matter that the record presents no reason for quashing the warrant, for where a court may quash or dissolve a writ on extrinsic evidence, the presumption is that everything was done rightly : Brown v. Ridgway, 10 Pa. 42.   No appeal lies from this order, as it was within the discretionary power of the court below : Renninger v. Thompson, 6 S. & R. 1 ; Holland v. White, 120 Pa. 228 ; Miller v. Spreeher, 2 Y. 162. Moreover, it is not a final judgment, but is interlocutory merely.

4. The court, however, was clearly right in holding that the warrant of arrest could not issue while the attachment was pending.   The allegation in the affidavit on which the warrant issued, that the attachment was practically at an end, because all the goods had been appropriated to the anterior fieri facias, was a matter not disclosed by the record of the attachment, and the judge might or might not believe it, on evidence which is not before this court.   As his opinion shows, he evidently did not believe it, because he finds that the attachment is still pending and still holding the defendant's property.   Whether his conclusion in this respect was warranted by the evidence, is a matter into which this court cannot inquire.   He did not decide that a warrant of arrest may not issue in a case commenced by attachment, but, adopting the view of Pearson, P. J., in Fenstman v. Ury, 2 Pears. 357, he held that when the attachment is still holding in its grasp all the debtor's prop-

Opinion of the Court.

erty, it is not a case for a warrant; and, although he used the word quash, he in reality exercised his discretionary power to discharge the defendant.

OPINION, MR. JUSTICE MITCHELL:

The extent of the revisory powers of this court over all judicial proceedings of subordinate tribunals has been discussed and defined in numerous cases, which are cited and classified by AGNEW, J., in Penna. R. Co. v. First German Luth. Cong., 53 Pa. 445, 450, 451. The particular jurisdiction brought before us in the present case, that of a judge issuing a warrant of arrest, under the act of 1842, for fraudulent debt, was carefully considered in Gosline v. Place, 32 Pa. 520, and again in Berger v. Smull, 39 Pa. 302. In the former, Chief Justice LOWRIE shows that certiorari and habeas corpus are both appropriate remedies, and may be used separately or together. In that case, the certiorari was the principal writ, and the habeas corpus was issued subsequently for the incidental purpose of admitting the relator to bail pending the hearing of the certiorari, and Chief Justice LOWRIE says expressly that the habeas corpus is ancillary only. Berger v. Smull was upon certiorari, and there was no habeas corpus in the case.

In view of these decisions, it is now too late to question the right of the plaintiffs to a review upon certiorari; and the contention that that writ lies only as ancillary to a habeas corpus cannot be sustained. It is true that both in Gosline v. Place and Berger v. Smull the defendant below had been committed by the judge, and the review of the proceedings was sought here for the purpose of escaping the consequences of the commitment. But the reasoning of both cases shows that this circumstance was not only not important, but was not considered relevant at all in reaching the decision. In Berger v. Smull, as already noted, there was no habeas corpus, and the result of the cases is that certiorari and habeas corpus may be used separately or together; and when used concurrently, the question, which is the principal writ and which merely ancillary, will depend on the facts of the particular case and the nature of the relief sought. The motion to quash this appeal must therefore be dismissed.

While the right to a review or certiorari is clear, it is equally

well settled that our action is limited to the regularity of the
proceedings as they appear upon the record.

The learned judge issued a warrant upon the affidavit filed
by plaintiffs. The defendant moved to quash the warrant,
and after argument the motion was allowed, and the warrant
quashed, the learned judge filing of record an opinion setting
forth the grounds of his action. This opinion, not being
strictly part of the record, is not reviewable here, in the sense
that it can be made the basis of decision. But, as matter of
information for this court, it confirms the deduction we should,
without it, be forced to draw from the face of the record, that
there was no hearing and no action of the judge on the merits
of the case. We have before us, therefore, a record showing
an affidavit sufficient to support a warrant; a warrant, regu-
larly issued, reciting that plaintiffs' have "produced satisfac-
tory evidence of said charges, as is fully set forth in the
affidavit;" and an order quashing the warrant on motion,
without a hearing on the facts. Such a record is reviewable
here. It is not like the case of foreign attachment, where the
validity of the writ depends on an extrinsic fact which can
only be heard and determined by the court issuing the writ,
and the evidence of which cannot be put on the record, but,
like an attachment under the act of 1869, the jurisdiction to
issue which must appear in the affidavit which is on the record.
An order dissolving such an attachment is not reviewable:
Wetherald v. Shupe, 109 Pa. 389, because, as was said by Jus-
tice THOMPSON in McElroy v. Dwight, quoted in the report of
Holland v. White, 120 Pa. 232: "We cannot review the ac-
tion of the court below in quashing the attachment upon a
question of fact." But an order to quash based on a question
of law appearing on the record is reviewable on certiorari, as
was done in Parks v. Watts, 112 Pa. 4. So here, if the judge
had heard the evidence and discharged the defendant, his ac-
tion would not have been reviewable; but, as the warrant was
quashed for matter of law appearing on the record, to wit, that
the proceedings, as appears by the affidavit on which the war-
rant issued, were had in an action commenced by attachment
under the act of 1869, we must consider the question of law
thus raised.

The object of the proceeding by warrant of arrest under

Opinion of the Court.

the act of 1842, and by attachment under the act of 1869, is the same, to compel payment of a debt fraudulently contracted, or payment of which is fraudulently evaded, but the modes of reaching it being entirely different, prima facie they are cumulative, and may be used concurrently. The attachment under the act of 1869 is the grasp of the law laid upon the goods of the debtor, analogous to execution by fieri facias; while the arrest under the act of 1842 is the grasp of the law on his person, analogous to that of a capias ad satisfaciendum. At common law, both forms of execution could issue concurrently: Pontius v. Nesbit, 40 Pa. 309; Tome's App., 50 Pa. 285, 298, though there could be but one satisfaction. Where, as in the present case, they are issued as mesne process, the attachment simply holds the property by lien, as security for payment if the plaintiff recover judgment. The warrant holds the debtor's person for the same purpose until he gives bond to pay, or that his property shall not be removed or disposed of, or that he will comply with the requisitions of the insolvent law. The attachment gives the creditor the security of an immediate grasp on such property as the sheriff can find, and the warrant gives him security that all the property rightfully liable for his debt shall be forthcoming to satisfy it at the appropriate time. There is nothing repugnant in these methods, and both may be necessary to a complete remedy. That they are not necessarily exclusive of each other is shown by the consideration that the attachment may be dissolved, and the suit go on as upon summons. In such an event—if, for example, an attachment should issue for fraudulent contraction of the debt, and should be dissolved for failure of proof, the action continuing as if upon a summons, and thereafter the debtor should fraudulently attempt to remove or conceal his goods—there could be no doubt that a warrant of arrest would lie. We see no reason why the same result should not follow where the attachment fails to grasp sufficient property to satisfy the claim, or from any other cause proves to be an inadequate remedy.

The cases cited on behalf of the defendant are not analogous, for they rest on the common-law doctrine that a levy on a fieri facias is presumed to be satisfaction, and therefore there is no debt to support the issue of a warrant. The closest of

them, Fenstman v. Ury, 2 Pears. 357, was an attachment after judgment, and, as said by the court, attached all the debtor's property that could be reached by proceedings under a warrant of arrest. Such cases present a different question from this, and are not in conflict with our conclusion.

> The order quashing the warrant is reversed, the warrant reinstated, and procedendo awarded.